IN THE VA DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD BIAS,

      Plaintiff,

vs.                                                                      No. CIV 20-0173 JB/LF

ROBERT WILKIE, Secretary,
Department of Veterans Affairs,

      Defendant.

<u>**MEMORANDUM OPINION**</u>[1]

    **THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment and Supporting Memorandum, filed August 10, 2021 (Doc. 30)("MSJ"). The Court held a hearing on September 21, 2021. <u>See</u> Clerk's Minutes at 1, filed September 21, 2021 (Doc. 39). The primary issues are: (i) whether Defendant Department of Veteran's Affairs ("VA") discriminated against Plaintiff Richard Bias on the basis of race by (a) requiring Bias to work outside his job description or (b) declining to interview Bias for a vacant position; and (ii) whether the VA retaliated against Bias for filing an Equal Employment Opportunity ("EEO") Complaint in 2011 by (a) requiring him to work outside his job description or (b) declining to interview Bias for a vacant position. The Court concludes that: (i) the VA did not discriminate against Bias by (a) having him work outside his job description or (b) declining to interview him for a vacant

---

[1]In the Court's Order, 2022 WL 856860, filed February 23, 2022 (Doc. 43), the Court granted the Defendant's Motion for Summary Judgment and Supporting Memorandum, filed August 10, 2021 (Doc. 30). In the Order, the Court states: "This Order disposes of the Defendant's Motion for Summary Judgment and Supporting Memorandum, filed August 10, 2021 (Doc. 30). The Court will issue at a later date, however, a Memorandum Opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

position; and (ii) the VA did not retaliate against Bias by (a) having him work outside his job description, or (b) declining to interview Bias for a vacant position.  Consequently, the Court will grant the MSJ.

## FACTUAL BACKGROUND

The Court takes its facts from the MSJ; the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed August 23, 2021 (Doc. 31)("Response"); and the Defendant's Reply to Plaintiff's Response to its Motion for Summary Judgment, filed September 7, 2021 (Doc. 34)("Reply").  Most of the facts are undisputed.  The Court states the undisputed material facts in the text.  See Fed. R. Civ. P. 56.  The Court specifically notes the facts that are disputed, or purportedly disputed, in the footnotes.

### 1.      The VistA Printer Installations.

In 2014, the VA employed Bias as an Information Technician Specialist ("ITS"), at the GS-9 level.[2]  See MSJ ¶ 1, at 6 (asserting this fact); Response ¶ 1, at 1 (admitting this fact).  On August 6, 2014, Debby Rodgers, an IT Specialist for the VistA Applications team, emailed Bias and three other IT Specialists asking if any of them were "up to the challenge" of setting up a VistA printer for facility personnel in Albuquerque, New Mexico.  Email from Debby Rodgers to Claudia J. Lucero, Raymond M. Ferguson, Richard Bias, and Andrea M. Griffen at 2 (dated 9:47 a.m., August 6, 2014), filed August 10, 2021 (Doc. 30-7)("9:47 a.m., August 6, 2014, Email").  Rodgers offered to assist the specialists in setting up the printer and stated that she could complete

_____

[2]GS-9 is the 9th paygrade in the Federal General Schedule ("GS") pay scale.  The federal government uses the GS pay scale to determine the salary for a federal civilian employee.  See General Schedule Classification and Pay, Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/    (last visited May 26, 2022).

the task by herself if necessary.  See 9:47 a.m., August 6, 2014, Email; MSJ ¶ 9, at 4 (asserting

this fact); Response ¶ 9, at 2 (admitting this fact).  Approximately one hour later, one of the

specialists, writing on behalf of the group, responded and said: "We want to set up the printer."

Email from Claudia Lucero to Debby Rodgers, Raymond M. Ferguson, Richard Bias, and Andrea

M. Griffen at 2 (dated 10:43 a.m., August 6, 2014).  See MSJ ¶ 10, at 4-5 (asserting this fact);

Response ¶ 10, at 2 (admitting this fact).  On or about August 12, 2014, Bias and the three other

IT Specialists successfully installed the printer.  See MSJ ¶ 12, at 5 (asserting this fact); Transcript

of Deposition of Richard Bias, taken July 14, 2021, at 37:1-16, filed August 10, 2021 (Doc. 30-

6)("Bias Depo."); Response ¶ 12, at 2 (admitting this fact).  Bias voluntarily installed the printer.

See MSJ ¶ 14, at 5 (asserting this fact); Bias Depo. at 38:14-25.[3]  See Response ¶ 14, at 2 (admitting

this fact in part and disputing this fact in part).  After installing the printer for Rogers, Bias installed

at least two or three additional VistA printers during August 2014.  See Response ¶ 36, at 4

(asserting this fact); Bias Depo. at 39:5-25; Reply ¶ 36, at 3 (admitting this fact).

**2.    The ITS GS-11/12 Position.**

On August 8, 2014, Bias applied for a vacant ITS GS-11/12 position, shortly after the VA

issued an ITS GS-11/12 vacancy announcement.  See MSJ ¶¶ 18-19, at 5 (asserting this fact);

Declaration of Gregory Moore, ¶ 2, at 1, filed August 10, 2021 (Doc. 30-9)("Moore Decl.");

Response ¶¶ 18-19, at 2 (admitting this fact).  Bias did not qualify for the position at the GS-12

---

[3]Bias admits that he voluntarily installed the printer, but purports to dispute this fact by contending that "[i]nstalling a VistA systems printer involves a higher level of IT knowledge. Plaintiff was working out of his grade level."  Response ¶ 14, at 2 (citing Bias Depo. at 24:3-25; id. at 75:6-25; id. at 77:1-24)(Bias, Hoses).  Bias does not dispute the fact that the VA asserts, and therefore, the Court concludes that Bias voluntarily installed the printer.  See D.N.M. LR-Civ. 56(1)(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

level, because he did not have one year of experience at the GS-11 level.  See MSJ ¶ 23, at 6 (asserting this fact).[4]  See Response ¶ 23, at 3 (admitting this fact in part and disputing this fact in part).  See 5 C.F.R. §300.604(a)("Candidates for advancement to a position at GS-12 and above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled.").

After the ITS GS-11/12 vacancy announcement closed, the VA's Human Resources office issued two candidate referral lists[5] identifying applicants qualified for GS-11 positions ("GS-11 certificate") for applicants qualified for GS-12 positions ("GS-12 certificate").  See MSJ ¶ 20, at 5-6 (asserting this fact); Moore Decl. ¶ 3, at 1; Response ¶ 20, at 2 (admitting this fact).  Four individuals were impaneled as a selection committee to "review applications, interview candidates, and make selection recommendations."  MSJ ¶ 24, at 6 (asserting this fact); Moore Decl. ¶ 6, at 1.  See Response ¶ 24, at 3 (admitting this fact).  Gregory Moore, the Chief of Business, Critical

---

[4]Bias admits that he was not employed as a GS-11 for one year, but denies that he was not qualified, because he "was doing GS12 work in August 2014" when he installed the VistA printers.  Response ¶ 23, at 3 (citing Bias Depo. at 22:14-25; id. at 23:1-10; id. at 45:2-20).  Bias argues that he "was doing GS12 work in August of 2014" and that he was "working outside of his position description."  Response ¶ 23, at 3 (citing Bias Depo. at 45:2-20).  Bias also contends that his position should have been reclassified in August 2014, in which case Bias would have been a GS-11.  See Response ¶ 23, at 3.  The Court concludes that installing VistA printers is a specialized task equivalent to the GS-11 level.  See Analysis § I(B)(1) infra, at 43-44.  However, Bias does not specifically controvert with consistent evidence in the record the fact, that he had been performing GS-11 work for a minimum of fifty-two weeks.  The Court will, therefore, deem this fact undisputed and concludes that Bias was not qualified for the position at the GS-12 level.  See D.N.M. LR-Civ. 56(1)(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[5]A candidate referral list . . . sometimes called a "certificate of eligibles" . . . is a list of applicants who are eligible, but not necessarily qualified, for the position to which they applied.  See, e.g., Glossary; Certificate of Eligibles, USAJOBS, https://www.usajobs.gov/help/working-in-government/unique-hiring-paths/federal-employees/ (last accessed June 1, 2022).

Systems, would supervise the selected applicants and chaired the committee.  See MSJ ¶ 26, at 6 (asserting this fact); Moore Decl. ¶ 6, at 1; Response ¶ 26, at 3 (admitting this fact).  The committee reviewed all applications to assess each applicants' qualifications and current positions.  See MSJ ¶ 28, at 6 (admitting this fact); Moore Decl. ¶ 6, at 1; Response ¶ 28, at 3 (admitting this fact).  After reviewing the applicants, Moore decided to interview only candidates on the GS-12 level.  MSJ ¶ 29, at 6 (asserting this fact); Moore Decl. ¶ 7, at 1.[6]  See Response ¶ 29, at 3 (denying this fact).  Moore stated that he did not interview GS-11 candidates, because he was "seeking highly competent individuals who could function at a high level with little or no direct supervision."  MSJ ¶ 31, at 6 (asserting this fact); Moore Decl. ¶ 7, at 1.[7]  See Response ¶ 29, at 6 (denying this fact).  Moore stated that the responsibilities for the vacant ITS GS-11/12 roles "were more complex than the typical IT positions at the VA facility" and that the positions required the person to have "knowledge and experience supporting, among other things, the management and oversight of

---

[6]In his Response, Bias purports to deny this fact by stating that "all applicants should have been interviewed to determine their skill sets and qualifications."  Response ¶ 29, at 3.  Bias does not point to any credible evidence in the record to support this statement, and the [?] that does not dispute the fact about what Moore did.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[7]In his Response, Bias purports to deny this fact by stating:

> Plaintiff admits that he was qualified for this position.  Plaintiff admits that he was not a GS11 for one year, but denies he was not qualified.  Plaintiff was doing GS12 work in August of 2014.  Plaintiff was working outside of his position description.  Had Plaintiff's position been reclassified correctly, Plaintiff would be a GS11.

Response ¶ 31, at 3.  Bias does not dispute that Moore states that he did not interview GS11 candidates or that Moore stated that he was seeking highly qualified candidates.  See Response ¶ 31, at 3; MSJ ¶ 31, at 6.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

VistA and the installation of VistA hardware upgrades." MSJ ¶ 32, at 6-7 (asserting this fact).  See Moore Decl. ¶ 7, at 1.[8]  See Response ¶ 32, at 3 (disputing this fact).  Moore discounted the candidates on the GS-11 certificate, because he "honestly believed" that the candidates on the GS-12 certificate were the best qualified applicants.  MSJ ¶ 33, at 7 (asserting this fact); Moore Decl. ¶ 8, at 1-2.[9]  See Response ¶ 33, at 4 (disputing this fact).  Moore did not know Bias, and "knew nothing about [Bias'] race, ethnicity, skin color, or prior EEO activity" when he decided to discount candidates on the GS-11 certificate.  MSJ ¶ 35, at 7 (asserting this fact).[10]  See Response

---

[8]In his Response, Bias purports to deny this fact by stating: "Plaintiff admits that he was qualified for this position.  Plaintiff was doing GS12 work in August of 2014.  Plaintiff was working outside of his position description.  Had Plaintiff's position been reclassified correctly, Plaintiff would be a GS11."  Response ¶ 32, at 3.  Bias does not dispute the job responsibilities the ITS position required, nor does he dispute the knowledge or experience that the ITS GS-11/12 role required.  See Response ¶ 32, at 3; MSJ ¶ 32, at 6.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[9]In his Response, Bias does not mention or otherwise respond to this fact, but purports to deny this fact by stating:

> Plaintiff admits that he was qualified for this position.  Plaintiff was doing GS12 work in August of 2014.  Plaintiff was working outside of his position description.  Had Plaintiff's position been reclassified correctly, Plaintiff would be a GS11.

Response ¶ 33, at 4.  Bias does not dispute the job responsibilities required in the ITS position, nor does he dispute the type of knowledge or experience required of the ITS role.  See Response ¶ 33, at 4; MSJ ¶ 33, at 7.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[10]In his Response, Bias does not mention or otherwise respond to this fact, but purports to deny this fact by stating: "Plaintiff denies the allegations in paragraph thirty-five and states that he worked with one of the committee members for a year."  Response ¶ 35, at 4.  Bias does not dispute, however, that Moore did not know Bias' race or prior EEO activity.  See Response ¶ 35, at 4; MSJ ¶ 35, at 7.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

¶ 35, at 4 (disputing this fact).

### 3.      The Employment Discrimination Complaint to the Office of Resolution Management.

On or about September 2, 2014, a Veterans Integrated Services Network ("VISN") Classification Specialist reclassified Bias' job position.  See MSJ ¶ 16, at 5 (asserting this fact); Harris Decl. ¶ 8, at 2; Response ¶ 16, at 2 (admitting this fact).  The new classification provided that twenty percent of the role's responsibilities include "set[ting] up, operat[ing], monitor[ing] computer systems and peripheral equipment such as CD read/write devices, printers, scanners, and external modems . . . [and] perform[ing] other duties as assigned."  MSJ ¶ 17, at 5 (asserting this fact).[11]  See Response ¶ 17, at 2 (denying this fact).

On October 9, 2014, Bias filed a Complaint of Employment Discrimination with the VA Office of Resolution Management ("ORM"), which he amended subsequently amended on January 8, 2015.  See Complaint of Employment Discrimination, filed August 10, 2021 (Doc. 30-3); ORM's Notice of Amendment, filed August 10, 2021 (Doc 30-5)("Amended ORM Notice"); Response ¶ 4, at 1 (admitting this fact).  The Amended ORM Notice stipulates that an investigator will examine:

> A)      Whether complainant was discriminated against based on age, color (dark), race (Black), and reprisal (prior EEO activity) when on or about August 12, 2014, he was required to set up VistA printers and grant "file man access" to employees.

---

[11]In his Response, Bias purports to deny this fact by arguing that that he was working outside of his grade level, because installing a VistA printer specifically "involves a higher level of IT knowledge."  Response ¶ 17, at 2.  During his deposition, Bias states that VistA printers did not fall under the job description's scope, because "only certain people can have access" to perform the coding for a VistA printer.  Bias Depo. at 78:15-17. (Bias).  Bias does not dispute, however, the factual language of the reclassified job description.  See Response ¶ 17, at 2; MSJ ¶ 17, at 5.  The Court, therefore, deems this fact undisputed.  See D.N.M. LR-Civ 56.1(b)("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

B)      Whether complainant was discriminated against based on age, color (dark), race (Black), and reprisal (prior EEO activity) when on or about September 2, 2014, he was denied a desk audit for his position.

C)      Whether complainant was discriminated against based on age, color (dark), race (Black), and reprisal (prior EEO activity) when on September 24, 2014, he was not interviewed or selected for the position of Information Technology Specialist, GS-11/12, under Announcement No. 1184700.

D)      Whether complainant was discriminated against based on age, color (dark), race (Black), and reprisal (prior EEO activity) when on December 19, 2014, he was given a performance bonus (cash award) that was a lesser amount than his co-workers received.

MSJ ¶ 6, at 3-4 (asserting this fact); Amended ORM Notice ¶ 5, at 2.  See Response ¶ 6, at 1 (admitting this fact).  Bias retired from the VA in 2019 and was employed as a GS-11 when he retired.  See Response ¶ 38, at 4 (asserting this fact); Reply ¶ 38, at 3 (admitting this fact).

## PROCEDURAL BACKGROUND

Bias filed his Complaint on February 28, 2020.  See Plaintiff's Complaint for Employment Discrimination on the Basis of Race, Age and Retaliation, filed February 28, 2020 (Doc. 1)("Complaint") ¶ 1, at 1.  Bias argues that the VA discriminated and retaliated against him when he was asked to install a VistA printer, and when he was not interviewed for the ITS G-11/12 position.  See Complaint ¶¶ 16-27, at 3-4.  Bias brings three claims against the VA: (i) race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); (ii) retaliation, in violation of Title VII; and (iii) age discrimination, in violation of Title VII.  Complaint ¶¶ 16-27, at 3-5.

### 1.      The MSJ.

The VA moved for summary judgment on August 10, 2021.  See MSJ at 1.  The VA requests that the Court grant summary judgment on Bias' claims that the VA discriminated against

Bias on the basis of race, color, and on Bias' allegations that the VA retaliated against Bias (i) by requiring Bias to work outside his job description; and (ii) by declining to interview Bias for the ITS position.  See MSJ at 1.[12]  The VA contends that Bias cannot establish a prima facie case of discrimination based on the case's material facts, and that there is no dispute regarding any material facts.  See MSJ at 1.

### a.    The VA's Arguments About Title VII Discrimination.

The VA argues that, because Bias has no direct proof of disparate treatment, he must establish a prima facie case of discrimination under Title VII by demonstrating that: (i) he belongs to a protected class; (ii) he was subjected to an adverse employment action; and (iii) the challenged action took place under circumstances giving rise to an inference of discrimination.  See MSJ at 9-10.  The VA contends that an action is adverse only when the employer's conduct is "materially adverse" to an employee's job status, meaning that it results in a "significant change in employment status, such as firing, failure to promote . . . reassignment with significantly different

---

[12]The Court notes that Bias alleges that "Defendant has discriminated against Bias in the terms and conditions of his employment on the basis of his []age in violation of Title VII." Complaint ¶ 25, at 4.  The Age Discrimination in Employment Act (ADEA) is the controlling law for age discrimination claims, not Title VII, and, thus, Bias has not brought his age discrimination complaint under the correct statute.  See 42 U.S.C. §§ 2000e-2(a)(1)("It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."); 29 U.S.C. §623(a)(1)("It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."); Federal Equal Employment Opportunity (EEO) Laws, https://www.eeoc.gov/fact-sheet/federal-laws-prohibiting-job-discrimination-questions-and-answers (last visited July 27, 2022)(stating that the federal laws prohibiting discrimination are "Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits employment discrimination based on race, color, religion, sex, or national origin . . . the Age Discrimination in Employment Act of 1967 (ADEA), which protects individuals who are 40 years of age or older.").  The Court, therefore, dismisses this claim.

responsibilities, or a decision causing a significant change in benefits."  MSJ at 10.

First, the VA argues that Bias cannot establish a prima facie case for discrimination based on the VistA printer's installation on August 12, 2014, because installing a VistA printer is not an adverse action, and the circumstances surrounding the printer installation do not warrant an inference of discrimination.  See MSJ at 10-13.  The VA contends that (i) Bias volunteered to install the printer; (ii) installing a VistA printer was within Bias' job description; and (iii) even if the task fell outside the scope of Bias' job description, the task "amounts to nothing more than a minor alteration of [Bias'] responsibilities" and, thus, installing the printer is not adverse.  MSJ at 10-12.  Moreover, the VA argues that the circumstances surrounding the VistA printer installation do not warrant an inference of discrimination, given that Rodgers contacted Bias to set up the printer "because of [his] abilities and need for assistance to address the Region's heavy workload," and not because of Bias' age or race.  MSJ at 13.

Second, the VA argues that, to establish a prima facie case of discrimination based on the VA declining to interview Bias for the ITS GS-11/12 position, Bias must establish that: (i) he belongs to a protected class; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) he was rejected, despite being qualified; and (iv) after being rejected, the position remained open, and the VA continued to seek applicants from persons of Bias' qualifications.  See MSJ 14-15.  The VA contends that Bias was not qualified for the ITS GS-11/12 position, because he did not have "one year of specialized experience at grade 11 or higher," and, thus, did not meet the time-in-grade requirement for the position.  MSJ at 14-16.  Further, the VA argues that Moore was unaware of Bias' age and race when he decided to limit interviews to applicants on the GS-12 certificate, and, thus, could not have discriminated against Bias on the basis of race or age.  See MSJ at 16-17.

Finally, the VA contends that a defendant "need only articulate a facially non-discriminatory" explanation for its actions to overcome the presumption of unlawful discrimination.  MSJ at 8-9 (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)("McDonnell-Douglas")).  The VA argues that it is entitled to summary judgment even if Bias can establish a prima facie case for discrimination, because the VA "has articulated legitimate, non-discriminatory explanations" both for the VistA printer installation and for the ITS GS-11/12 position, and, because Bias cannot establish that the legitimate reasons are pretextual.  MSJ at 13, 17-18.

### b.    The VA's Argument About Retaliation.

The VA argues that, to establish a prima facie case for retaliation, Bias must show that: (i) he engaged in protected opposition to discrimination or participated in a proceeding or hearing under Title VII; (ii) he suffered an adverse action that a reasonable employee would have found material; and (iii) there is a causal nexus between Bias' opposition and the VA's adverse action. See MSJ at 13-14 (citing Montes v. Vail Clinic, Inc., 497 F.3d 1160 (10th Cir. 2007); Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1123-24 (10th Cir. 2007)).  First, the VA reasons that Bias cannot establish a prima facie case for retaliation based on the VistA printer installation, because Bias did not suffer an adverse employment action, and because Bias cannot establish a casual nexus between his protected EEO activity and installing the VistA printer.  See MSJ at 14.  The VA reiterates that installing the VistA printer is not an adverse action and that Rogers did not consider Bias' prior EEO activity when she sought volunteers to install the printer.  See MSJ at 14.  Second, the VA argues that Bias cannot establish a prima facie case for retaliation based on the ITS GS-11/12 position, because he cannot establish a causal nexus between his EEO activity and the VA's decision to promote someone other than Bias.  See MSJ at 18-19.  The VA notes that

Bias' retaliation claim stems from a 2011 charge of discrimination with the EEOC, and contends that, although Bias engaged in protected EEO activity, it is inappropriate to assume retaliatory conduct because the "approximately two year and nine-month gap" between the EEOC Complaint and the VA's decision not to interview Bias "precludes a presumption that the decision was retaliatory." MSJ at 19. Finally, the VA again maintains that it has provided "legitimate, non-discriminatory explanations" for both the VistA printer installation and the ITS position, and thus, is entitled to summary judgment, because Bias cannot establish that the VA's explanations are pretextual. MSJ at 14, 18-20.

> **2.      The MSJ Response**.

Bias asserts that the VA does not demonstrate that it is entitled to summary judgment as a matter of law. See Response at 1. First, Bias argues that installing the VistA printer is an adverse employment action and that he was qualified for the ITS position at the GS-12 level. See Response at 5. Second, Bias contends that he has established an inference of discrimination, because Moore did not interview GS-11 candidates. See Response at 7. Bias, therefore, asks the Court to deny the MSJ in its entirety. See Response at 1.

> **a.      Bias' Response to the VA's Argument About Discrimination**.

Bias first contends that he establishes a prima facie case for discrimination based on the VistA printer incident. See Response at 5. Bias indicates that he is a member of a protected class and argues that installing the VistA printer qualifies as an adverse action, because he was working outside of his grade level and classification, and "was made to set up VistA printers that other IT technicians were not competent to set up." Response at 5. Bias also disputes the VA's argument that installing the VistA printer amounts to a minor alteration in job responsibilities, because he installed "at least two to three" VistA printers while he was in a GS-9 role. Response at 5. Bias

contends that he was "singled out because of his race or age," "was one of the IT technicians that was competent enough to install a VistA printer," and that while he volunteered to install the printer for Rogers, he then installed additional VistA printers "one or two times on his own." Response at 6.

Next, Bias argues that he can establish a prima facie case for "non selection discrimination" based on the ITS GS-11/12 position. Response at 6. Bias contends that he was qualified for the ITS position, because "he was performing the work of a GS-11 and GS-12," and that he "retired from the Veterans Administration and was a GS-11 at the time of his retirement." Response at 5-6. Further, Bias notes that, while he and Moore never met, Moore "had access . . . to knowledge" about Bias' age and race from Steve Tanner, Moore's co-committee member and Bias' former supervisor. Response at 6. Finally, Bias contends that he provides evidence that the VA's explanation for the ITS position is pretext, because "[i]t makes no sense to post a GS-11 position and not review any of the applicants," and Bias insists that the selection committee should have interviewed the candidates on the GS-11 certificate. Response at 6.

**b.      Bias' Response to the VA's Argument About Retaliation.**

Bias insists that he has provided "at the very least . . . an inference of discrimination and retaliation," because Moore's reason for discounting GS-11 applicants "makes no sense." Response at 7. Bias acknowledges that Moore limited interviews to candidates on the GS-12 certificate, because he sought "competent IT technicians," but argues that he "had been doing GS-12 work for some time" and that Moore did not give the applicants on the GS-11 certificate "a chance to prove their skills." Response at 7. Further, Bias reiterates that Moore "had access to information from . . . Tanner" and argues that he has "provided evidence of pretext in the decision not to hire GS-11 applicants." Response at 7. Bias does not argue how anyone retaliated against

- 13 -

him based on the VistA printer installation.

3.   **The MSJ Reply**.

The VA replies and argues that there are no disputes about any material fact, despite Bias denying several allegations. See Reply at 1. The VA argues that Bias' Response fails to establish a prima facie case for discrimination or retaliation based on the VistA printer installation and on the ITS GS-11/12 position. See Reply at 1. Further, the VA contends that Bias relies on evidence "that neither rebuts nor controverts" the asserted material facts and, thus, asks the Court to grant summary judgment. Reply 1-3, 11.

a.   **The VA's Reply to Bias' Argument About Discrimination**.

First, the VA argues that Bias does not address the VA's arguments that installing the VistA printer is not an "adverse action." Reply at 4. Specifically, the VA notes that Bias fails to respond to the arguments that: (i) because he volunteered to install the printer, he did not suffer an adverse action; and (ii) even if installing a VistA printer falls outside the scope of Bias' job description, the task was, "at worst, a minor alteration of Bias' responsibilities that is not actionable." Reply at 4. The VA contends that Bias' "failure to address Defendant's arguments is fatal" and that this failure justifies the Court granting summary judgment in the VA's favor. Reply at 4.

The VA acknowledges Bias' argument that "he suffered an adverse action because he installed two or three printers 'that were outside his grade level,'" but argues that Bias' argument is "woefully deficient," because he "fails to provide any evidence" demonstrating that installing the printer "caused a significant change" in Bias' employment status. Reply at 4 (citing Response at 5). The VA argues that "the evidence shows that [Bias] sustained no harm," because Bias volunteered to receive VistA printer training, and spent "approximately 60 to 90 minutes" installing three VistA printers, which amounts to "less than 1% of the 160 hours [Bias] worked in

August [of 2014]."  Reply at 5 (citing Bias Depo. 35:3-13; 38:7-9).  The VA maintains that, even if installing a VistA printer falls outside the scope of Bias' job description, the task was "nothing more than, at most, a minor alteration of [Bias'] job duties and not an adverse action."  Reply at 5.

Second, the VA argues that Bias' arguments for discrimination based on the ITS GS-11/12 position "are unpersuasive and lack evidentiary support."  Reply at 6.  The VA contends that whether Bias was performing GS-12 work "is of no consequence," because Bias admitted that he did not qualify for a GS-12 position.  Reply at 6-7 (citing Bias Depo. at 54:1-11).  The VA also argues that "the undisputed facts" of this case "preclude a finding" that Moore intended to discriminate against Bias.  Reply at 7.  The VA contends that Bias' allegations that "Moore had access to Tanner's knowledge" neither rebut nor controvert Moore's sworn testimony that he knew nothing about Bias' race, ethnicity, skin color or prior EEO activity when he discounted the applicants on the GS-11 certificate.   Reply at 7.

Finally, the VA contends that the relevant test whether Moore's decision to discount GS-11 applicants was pretextual is whether Moore "honestly believed in his reasons" for discounting the GS-11 applicants and whether Moore "acted on those beliefs in good faith."  Reply at 9.  The VA argues that Bias cannot demonstrate that Moore's decision to limit interviews to GS-12 candidates is pretext for unlawful discrimination, because Moore's explanation is "facially non-discriminatory," and contends that Bias has not proffered any evidence "questioning the sincerity of Moore's beliefs."   Reply at 7-8.

### b.      The VA's Reply to Bias' Argument About Retaliation.

First, the VA argues that Bias "fails to address" the arguments for summary judgment on the retaliation claim based on the VistA printer incidents.  Reply at 6.  The VA argues that Bias' failure to address the arguments "constitutes an abandonment of the claim, warranting the grant of

summary judgment."  Reply at 6.  Second, the VA maintains that Bias cannot establish a prima

facie case for retaliation based on the ITS GS-11/12 position, because Bias has not established a

causal nexus between his protected activity and Moore's decision to limit interviews to GS-12

applicants.  See Reply at 9-10.  The VA contends that "the two-year, nine month gap" between the

EEOC Complaint and Moore's decision "is too long to support an inference of causation," and that

Bias must "come forward" with "more than mere speculation, conjecture, or surmise."  Reply at

10.  Finally, the VA contends that the Court should grant summary judgment, because Bias does

not demonstrate that the VA's "legitimate, non-retaliatory explanations" are pretextual.  Reply at

10.

4.      **The Hearing**.

The Court held a hearing on the MSJ on September 21, 2021.  See Clerk's Minutes at 1.

The VA began its argument in support of the MSJ by stating that Bias filed a complaint with the

VA's Office of Resolution Management for in October 2014.  See Draft Transcript of September

23, 2021, Hearing at 2:7-17 (taken September 23, 2021)(Hoses)("Tr.").[13]  The VA noted that Bias

alleges that he was "the victim of discrimination" when he installed a VistA printer on August 4,

2014, and when the VA did not select him for a promotion on September 24, 2014.  See Tr. at 2:7-

17 (Hoses).

The Court asked the VA to describe the VistA printer and explain its significance to the

case.  See Tr. at 2:18-21 (Court).  The VA described the VistA printer as "just a printer like any

other printer" that accesses records via the VA medical records system.  Tr. at 2:22-24 (Hoses).

---

[13]The Court's citations to the draft transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

The VA clarified that two claims in the ORM administrative complaint are not before the Court "by agreement of the parties," and that the VA moves for summary judgment only on the claims relating to the VistA printer and the ITS GS-11/12 position.  Tr. 2:7-17 (Hoses).

The VA argued that Bias cannot establish a prima facie case of discrimination, because Bias did not suffer an adverse employment action, nor did the challenged action take place under circumstances giving rise to an inference of discrimination.  See Tr. at 3:5-10 (Hoses).  The VA contended that an adverse employment action must be "materially adverse," and must relate to conduct that "results in a significant change of the terms and conditions of [one's] employment." Tr. at 3:11-15 (Hoses).  The VA argued that Bias was not subjected to an adverse employment action, because he and his coworkers "raised their hands and said yes" to voluntarily installing the VistA printer on August 14, 2014.  Tr. at 4:5-11 (Hoses).  The VA noted that "no one else was paid to do this service" and argued that Bias' claim is "not actionable" without showing that his coworkers were paid.  Tr. at 4:13-15 (Hoses).  Next, the VA argued that installing the VistA printer is not an adverse employment action, because installing the VistA printer "clearly falls within the purview" of Bias' job description.  Tr. at 4:16-25 (Hoses); id. at 5:1-3 (Hoses). The VA added that, even if installing the VistA printer was outside the purview of Bias' job description, it is not an adverse action, because "it had no material impact on the terms and conditions of his employment," and that it took Bias and his coworkers "less than an hour" to install the printer, or "less than one percent of the 160 hours" Bias worked in August 2014.  Tr. at 5:17-25 (Hoses).

The VA then addressed the arguments in Bias' Response.  See Tr. at 6:3-5 (Hoses).  The VA contended that Bias does not respond to the arguments that: (i) installing a VistA printer is not an adverse action, because he volunteered to install it; and (ii) even if installing the printer is outside the job description's scope, it is not an adverse action, because the "the task was too brief a time to

rise to the level" of an adverse action.  Tr. at 6:1-5 (Hoses).  The VA noted that Bias argues that the VistA printer installation is an adverse action, because "install[ing] at least two or three VistA printers . . . [was] outside his grade.  Plaintiff was working outside his classification and therefore subject to an adverse action."  Tr. at 6:5-9 (Hoses)(citing Response at 5).  The VA argued that Bias cannot "expand the scope of his claim in this action" by asserting that he installed more than one printer, because he "confined his claim to one instance" of installing a printer in his administrative complaint.  Tr. at 6:11-15 (Hoses).  The VA contended that Bias "doesn't present any evidence or explain" how installing a VistA printer qualifies as an adverse action, and that Bias does not demonstrate how installing the printer "affected a significant change in the terms and circumstances of employment."  Tr. at 6:16-21 (Hoses).

Next, the VA argued that Bias cannot establish a prima facie case of discrimination, because there is "no evidence" that Rogers contacted Bias to install the printer because of his race or age and, thus, the VistA printer installation does not warrant an inference of discrimination.  Tr. at 6:21-7:3 (Hoses).  The VA asserted that, rather than addressing this argument, Bias instead emphasized that he suffered an adverse action, because he installed two or three VistA printers.  See Tr. at 7:4-7 (Hoses).  The VA conceded that Bias installed two or three VistA printers, but argued that the number of installations is insufficient evidence to infer discrimination.  See Tr. at 7:7-10 (Hoses).  Next, the VA addressed Bias' retaliation argument and stated that Bias did not suffer an adverse action "for the same reasons. . . mentioned previously," namely, that Bias conceded in his deposition that Rogers did not contact him because of his prior EEO activity.  Tr. at 7:16-20 (Hoses).  Finally, the VA argued that, ultimately, Bias abandons his claims, because he does not address several of the VA's arguments.  See Tr. at 7:20-25 (Hoses).

The Court then directed Bias to make his arguments relating to his contention that the VA

discriminated against him and retaliated against him based on the VistA printer installation incident. See Tr. at 8:3-6 (Court). Bias explained that installing a VistA printer requires "special training," and that Rogers emailed him and his coworkers after the specialists had received training for installing VistA printers. Tr. at 8:11-17 (Gilpin). Bias argued that the specialized training supports his contention that he was working outside the scope of his paygrade and job classification. See Tr. at 8:22-25-9:4 (Gilpin). Bias admitted that working outside a person's paygrade does not constitute discrimination, but argued that he was subsequently "singled out because of his expertise and IT knowledge" to install two or three additional printers. Tr. at 9:11-19 (Court, Gilpin)(Q: "Does working outside your paygrade constitute discrimination?" A: "No."). Bias stated that the number of setups is important to the adverse action analysis, because "he was asked after that one set up . . . to do . . . at least a couple other" VistA printer setups. Tr. at 10:5-8 (Gilpin). The Court remarked that Bias was seemingly adept at installing VistA printers and asked Bias how his skillset connects to his argument that installing the printer is an adverse action. See Tr. at 10:9-13 (Court). Bias responded that, because he was asked to set up the other VistA printers, and, because of his expertise, he was "eventually promoted to a GS-11" and was "very good at his job." Tr. at 10:14-18 (Gilpin).

The VA responded, reiterating that, even if the number of printer setups persuades the Court, installing a VistA printer is not an adverse action, because Bias spent, at most, a cumulative ninety minutes performing the setups. See Tr. at 11:2-20 (Hoses). The VA affirmed that it has articulated a "legitimate, non-discriminatory" explanation for its actions and asked the Court to grant summary judgment for the discrimination claim. Tr. at 12:3-13:4 (Hoses).

Next, the VA argued that Bias' opinion that he was performing GS-12 work is insufficient to establish that he was qualified for the ITS GS-11/12 position. See Tr. at 16:3-6 (Hoses). The

VA reiterated that the vacancy announcement stipulated that applicants must have one year of experience at the GS-11 level, and Bias did not have that experience when he applied for the position.  See Tr. at 16:6-9 (Hoses).  Further, the VA contended that Bias assumes that Tanner told Moore about Bias' age or race, but that no evidence corroborates that assumption.  See Tr. 17:1-4 (Hoses).  The VA argued that the selection committee had no obligation to interview candidates on the GS-11 certificate, nor did the committee have to determine whether any applicants were performing GS-12 work.  See Tr. at 18:1-5 (Hoses).  The VA described Bias' argument as a suggestion that the selection committee committed a "procedural irregularity," but argues that Bias bases his suggestion on "conjecture and unsubstantiated opinions" and does not identify an applicable procedural policy to support his argument.  Tr. at 18:5-15 (Hoses).

In response, Bias stated that he learned that the committee would not interview GS-11 applicants during his deposition, and that, although he does not know of any explicit interaction between Tanner and Moore, "Moore might have had some knowledge" about Bias' race or age.  Tr. 19:4-20 (Gilpin).  Before moving on to the retaliation argument for the ITS GS-11/12 position, the Court asked Bias to address briefly whether he saw a difference between the discrimination claim and the retaliation claim based on the VistA printer.  See Tr. at 20:17-21 (Court).  Bias said he did not see a difference between the two claims.  See Tr. at 20:22 (Gilpin).

Turning to the retaliation claim, the VA argued that, when there is more than a three-month gap between a plaintiff's protected activity and an employer's unsavory conduct, the plaintiff must produce additional evidence to create a presumption of retaliation.  See Tr. at 21:18-24 (Hoses).  The VA argued that Bias has not produced additional evidence that connects his EEO complaint in 2011 to the ITS GS-11/12 position in 2014, and, "more importantly," Moore did not know that Bias had filed an EEO complaint in 2011.  Tr. at 22:2-15 (Hoses).  The VA also noted that Tanner and

Bias worked together during "2006 or 2007" -- before Bias filed the EEO complaint in 2011 -- and, thus, Tanner likely was unaware of the EEO complaint and could not have disclosed the complaint to Moore.  Tr. at 23:7-16 (Hoses).  The VA concluded by asserting that summary judgment is appropriate and that there are no disputes about any material facts.  See Tr. at 23:21 (Hoses); id. at 24:23-25 (Hoses).  Bias concluded his argument by asserting that his strongest argument is that the VA discriminated against Bias based on race and age when he installed the VistA printer.  See Tr. at 26:1-3 (Gilpin).  After the parties discussed scheduling, the hearing adjourned.  See Tr. at 26:18-31:24 (Hoses, Court, Gilpin).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Schs., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(alteration in Herrera v. Santa Fe Pub. Schs.)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Celotex").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007)(internal quotations and brackets

omitted).

Plustwik v. Voss of Nor. ASA, No. 11-CV-0757 DS, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(emphasis added).  "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[14]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby").  In American Mechanical Solutions, LLC v. Northland Piping, Inc., 184 F.3d 1030 (D.N.M. 2016)(Browning, J.), the Court granted summary judgment for the defendant when the plaintiff did not offer expert evidence supporting causation or proximate causation in its breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims.   184 F.3d at 1075-78.  The Court reasoned that the plaintiff could prove neither the breach-of-contract claim's causation requirement nor the breach-of-the-implied-warranty-of-merchantability claim's proximate-causation requirement with mere common knowledge, and so New Mexico law required that the plaintiff bolster its arguments with expert testimony, which the plaintiff had not provided.  See 184 F. Supp. 3d at 1067, 1073, 1075, 1079.  The Court determined that, without the requisite evidence, the plaintiff failed to prove "an essential element of the nonmoving party's case," rendering "all other facts immaterial."  184 F. Supp. 3d at 1075 (internal quotation marks

---

[14]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.")

omitted)(quoting Plustwik v. Voss of Nor. ASA, 2013 WL 1945082, at *1).

Thus, if a plaintiff has the burden of proof, and the plaintiff has no competent evidence, the defendant, even without any competent evidence itself, may secure summary judgment by pointing out the plaintiff's lack of competent evidence. See Celotex, 477 U.S. at 323-25 (providing that summary judgment is proper where a plaintiff lacks evidence on an essential element of its case); Am. Mech. Sols., LLC v. Northland Piping, Inc., 184 F. Supp. 3d at 1075 (granting summary judgment because plaintiff lacked evidence on causation); Morales v. E.D. Entyre & Co., 382 F. Supp. 2d 1252, 1272 (D.N.M. 2005)(Browning, J.)(granting summary judgment because plaintiff lacked competent evidence that the defendants defectively manufactured an oil distributor).  A conclusory assertion that the plaintiff lacks evidence is insufficient, however, to secure summary judgment; the defendant must make some evidentiary showing that the plaintiff lacks competent evidence.  See Halley v. Huckaby, 902 F.3d 1136, 1143 (10th Cir. 2018)(stating that summary judgment may be warranted if the movant notes a lack of evidence for an essential element of the claim).  See also 11 James Wm. Moore et al., Moore's Federal Practice § 56.40[1][b][iv], at 56-109 to -111 (3d ed. 2018).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Liberty Lobby, 477 U.S. at 259.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried."  (quoting Coleman v. Darden, 595 F.2d 533, 536 (10th Cir. 1979)).

A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. v. Omer, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)(McConnell, J.)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).  To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Liberty Lobby, 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party.  See Liberty Lobby, 477 U.S. at 251

(quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)("Schuylkill")); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [First Nat. Bank of Ariz. v.] Cities Service,[] 391 U.S. [253], 288-[89] . . . . If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 . . . (per curiam), or is not significantly probative, Cities Service, . . . at 290 . . . summary judgment may be granted." Liberty Lobby, 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, cannot find for the nonmoving party, "there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Fourth, the court cannot decide any credibility issues. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified-immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the United States Supreme Court concluded that summary judgment is appropriate where video evidence clearly contradicted the plaintiff's version of the facts.  See 550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (alterations in Scott v. Harris)(emphasis in Liberty Lobby).

The United States Court of Appeals for the Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir.

2008)(quoting <u>Scott</u>, 550 U.S. at 380); <u>see also</u> <u>Estate of Larsen ex rel. Sturdivan v. Murr</u>, 511 F.3d 1255, 1258 (10th Cir. 2008).

<u>Thomson v. Salt Lake Cnty.</u>, 584 F.3d at 1312 (second alteration in <u>Thomson v. Salt Lake Cnty.</u>, third and fourth alterations in <u>York v. City of Las Cruces</u>).  "The Tenth Circuit, in *Rhoads v. Miller*, [352 F. App'x 289 (10th Cir. 2009),] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony." <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.), <u>aff'd</u>, 499 F. App'x 771 (10th Cir. 2012)(unpublished).[15]

Parties may allege new claims in motions for summary judgment.  <u>See</u> <u>Evans v. McDonald's Corp.</u>, 936 F.2d 1087, 1090-91 (10th Cir. 1991).  When a party raises a new claim in a motion for summary judgment, a court treats the motion for summary judgment as a request to

---

[15]<u>Lymon v. Aramark Corp.</u> is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that <u>Lymon v. Aramark Corp.</u>, <u>Webster v. Shulkin</u>, 707 F. App'x 535 (10th Cir. 2017)(unpublished); <u>Koon v. Sedgwick Cnty., Kan.</u>, 429 F. App'x 713 (10th Cir. 2011)(unpublished); <u>Robinson v. Cavalry Portfolio Servs., LLC</u>, 365 F. App'x 104 (10th Cir. 2010)(unpublished); <u>Anderson v. Clovis Municipal Schools</u>, 265 F. App'x 699 (10th Cir. 2008)(unpublished); <u>Carter v. Mineta</u>, 125 F. App'x 231 (10th Cir. 2005)(unpublished); <u>Belcher v. Boeing Com. Airplane Grp.</u>, 105 F. App'x 222 (10th Cir. 2004)(unpublished); <u>Jones v. Eaton Corp.</u>, 42 F. App'x 201 (10th Cir. 2002)(unpublished); and <u>Maultsby v. Okla.</u>, 46 F. App'x 948 (10th Cir. 2002)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

amend the complaint pursuant to rule 15 of the Federal Rules of Civil Procedure.  See Viernow v. Euripides Dev. Corp., 157 F.3d 790 n.9 (10th Cir. 1998).  The Tenth Circuit has stated:

> As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.

Evans v. McDonald's Corp., 936 F.2d at 1090-91 (quoting 4 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1219, at 94 (4th ed. 2021)("Wright & Miller")).  While the purpose of "fact pleading" is to give defendants fair notice of claims against them "without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery," plaintiffs may not "wait until the last minute to ascertain and refine the theories on which they intend to build their case."  Evans v. McDonald's Corp., 936 F.2d at 1091.

## LAW REGARDING RETALIATION CLAIMS

"A claim of retaliation is a distinct allegation of an unlawful employment practice." Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300, 1314 (10th Cir. 2005).  A Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act."  Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  To succeed on a claim of retaliation, a plaintiff must show: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action.  See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). An adverse employment action "must be materially adverse to the employee's job status. . . .  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." Meiners v. Univ. of Kan., 359 F.3d 1222, 1230 (10th Cir. 2004)(internal quotation marks omitted)(citations omitted).

In Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300 (10th Cir. 2005), the plaintiff alleged a series of acts that she stated were in retaliation for her use of the internal-affairs complaint process. See 397 F.3d at 1314. These acts included the failure to receive backup, an angry outburst by a lieutenant during an internal affairs investigation, and her general ostracization by other officers. See Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1314. The Tenth Circuit found: "None of the actions alleged by Ms. Duncan before April 14, 1998 materially affected her employment status. These acts may have made her work environment unpleasant, but they are insufficient to support a retaliation claim." Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d at 1314. The Tenth Circuit noted that the plaintiff had identified one act severe enough to be an adverse employment action to satisfy the second prong for retaliation -- she was transferred to the police academy in retaliation for filing her original EEOC charge; however, the Tenth Circuit found that she failed to file a separate EEOC charge detailing the plausibly adverse action, and thus the district court properly dismissed her retaliation claim. See Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d at 1314.

"[T]he absence of a reference to unlawful discrimination . . . can preclude a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII." Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002). See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005)(holding, that, in Title VII retaliation case, an employee's comments about the absence of black managers did not constitute protected activity, because employee failed to attribute the absence of managers to racial discrimination); Trammel v. Simmons First Bank of Searcy, 345

F.3d 611, 615 (8th Cir. 2003)(holding that ADEA plaintiff's letter-writing campaign accusing employer of improper loan procedures was not protected activity, because the letters were not written to oppose age discrimination); Barber v. CSX Distrib. Serv's., 68 F.3d 694, 701 (3d Cir. 1995)(holding that employee's ADEA retaliation claim failed, because employee's criticism of employer's selection of a less qualified, younger applicant for a job, without specifically complaining about age discrimination, did not constitute protected conduct).

## LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin." Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2, 2000e-3).   The Court has noted that Title VII generally protects individuals from employers' improperly motivated adverse treatment in the workplace: "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(internal quotation marks and alterations omitted)(quoting 42 U.S.C. § 2000e-2(a)(1)).  With the 1972 amendments to the statute, Title VII's protections apply to federal and private employees.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)); Walton v. N.M. State Land Office, 113 F. Supp. 3d 1178, 1184 (D.N.M. 2015)(Browning, J.); Gerald v. Locksley, 785 F. Supp. 2d 1074, 1098 (D.N.M. 2011)(Browning, J.).

1.      __Title VII Retaliation.__

To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir. 2007)(internal quotation marks omitted)(quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202). To establish a causal connection, a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Proctor v. United Parcel Serv., 502 F.3d at 1208 (quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)). Generally, if the temporal proximity between the protected activity and the adverse action is not "very close in time," the plaintiff "must offer additional evidence to establish causation." Proctor v. United Parcel Serv., 502 F.3d at 1209 (internal quotation marks omitted)(quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d at 1228). See Walton v. N.M. State Land Office, 113 F. Supp. 3d at 1190; Gerald v. Locksley, 785 F. Supp. 2d at 1099-1100.

2.      __Materially Adverse Employment Action.__

The Tenth Circuit liberally defines what constitutes an adverse employment action. See Orr v. City of Albuquerque, 417 F.3d 1144, 1150 (10th Cir. 2005)("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action."). The Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996). Instead, we take a "case-by-case approach," examining the unique factors relevant to the situation at hand. *Jeffries* [v. Kansas, 147 F.3d 1220, ]1232 [(10th Cir. 1998)]. Nevertheless, we will not consider "a mere inconvenience or an alteration

of job responsibilities" to be an adverse employment action. *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) . . . .

Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998).  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment."  Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64 (2006).  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)(internal quotation marks omitted)(quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 67-68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms.").  "We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'"  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004)).  Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, Berry v. Stevinson Chevrolet, 74 F.3d at 986, although "'a mere inconvenience or an alteration of job responsibilities' will not suffice," Annett v. Univ. of Kan., 371 F.3d at 1239 (quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 532).

In Anderson v. Clovis Municipal Schools, 265 F. App'x 699 (10th Cir. 2008)(unpublished), the Tenth Circuit, in an unpublished opinion, addressed the requirement of an adverse employment action in the context of a disparate-treatment claim and a hostile work environment claim.  There,

an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment.  See 265 F. App'x at 704.  Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999), the plaintiff argued that the growth plan and formal reprimand rose to the level of an adverse employment action under Tenth Circuit law.  See 265 F. App'x at 704.  In MacKenzie v. City & Cnty of Domier, the Tenth Circuit discussed Anderson v. Clovis Municipal School's reliance on Schuler v. City of Boulder and stated: "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit."  414 F.3d at 1279 (internal quotation marks omitted)(quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).   See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII proscribes only discriminatory conduct that "alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] [the employee's] status as an employee" (second alteration added)(quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 533)).  "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  Robinson v. Cavalry Portfolio Servs., LLC, 365 F. App'x 104, 114 (10th Cir. 2010)(unpublished)(internal quotation marks omitted)(quoting Haynes v. Level 3 Commc'ns, 456 F.3d at 1222).  See Walton v. N.M. State Land Office, 113 F. Supp. 3d at 1190-92; Gerald v. Locksley, 785 F. Supp. 2d at 1100-01.

## ANALYSIS

The VA argues that there is no genuine dispute of material fact that it did not discriminate

against Bias on the basis of race or retaliate against him because of his prior EEO activity when (i) on August 12, 2014, Bias installed a VistA printer, and then subsequently installed two to three more VistA printers; or (ii) on September 24, 2014, the VA declined to interview or select Bias for an ITS GS-11/12 position.  See MSJ at 1.  According to the VA, Bias "cannot establish a prima facie case of discrimination" for the VistA printer installation, because Bias "fails to provide any evidence" that he was subjected to an adverse employment action when he installed the VistA printer, or that there is a connection between the VistA printer installation and Bias' race or prior EEO activity.  MSJ at 1-2.  The VA contends that Bias cannot establish a prima facie case of discrimination based on the ITS GS-11/12 position, because he did not qualify for the position.  See MSJ at 2.  Finally, the VA argues that Bias does not address its arguments, which "warrants the grant of summary judgment in its favor."  Reply at 4 (citing Pittman v. Wakefield & Assocs., Inc., No. 16-CV-02695-RBJ-KMT, 2017 WL 5593287 at *5 (D. Colo. 2017)(Brooke-Jackson, J.).  The VA contends that it is entitled to summary judgment on both of its claims if it shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  MSJ at 7 (citing Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. at 323).  Bias contends that the VA "has failed to carry its burden" of demonstrating that summary judgment is appropriate and that he can establish a prima facie case of discrimination.  See Response at 1, 6-8.  The Court concludes that the VA did not discriminate against Bias on the basis of race or retaliate against Bias based on his prior EEO activity (i) when Bias installed several VistA printers in August, 2014; or (ii) on September 24, 2014, when the VA declined to interview or select Bias for an ITS GS-11/12 position.

I.    **THE VA DID NOT RACIALLY DISCRIMINATE AGAINST BIAS WHEN HE INSTALLED VISTA PRINTERS IN AUGUST, 2014, OR BY NOT INTERVIEWING HIM FOR THE ITS GS-11/12 POSITION.**

First, the VA argues that there is no genuine factual dispute that it did not discriminate against Bias in violation of Title VII.  See MSJ at 16-22.  Title VII prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  See West v. Gibson, 527 U.S. 212, 214 (1999).  When a plaintiff lacks evidence of an employer's intentional discrimination, a plaintiff must establish a prima facie case of discrimination by producing evidence that: (i) he belongs to a protected class; (ii) he was subjected to an adverse employment action; and (iii) the challenged action took place under circumstances giving rise to an inference of discrimination.  See McDonnell-Douglas, 411 U.S. at 802; Hysten v. Burlington N. and Santa Fe R.R. Co., 296 F.3d 1177, 1181 (10th Cir. 2002).  If Bias establishes a prima facie case of discrimination, then the burden of production shifts to the VA to provide a legitimate, non-discriminatory explanation for its actions.  See McDonnell-Douglas, 411 U.S. at 802-04.  If the VA provides a facially non-discriminatory explanation, the burden shifts back to Bias to prove that the VA's explanation is "merely a pretext for discrimination."  Jaramillo v. Colo. Jud. Dep't., 427 F.3d 1303, 1307 (10th Cir. 2005).

A.    **THE VA DID NOT DISCRIMINATE AGAINST BIAS WHEN HE INSTALLED THE VISTA PRINTERS.**

Here, Bias does not argue that the VA intentionally discriminated against him, and, thus, Bias must establish a prima facie case to demonstrate that the VA violated Title VII by racially discriminating against him.  See McDonnell-Douglas, 411 U.S. at 802-04.  As a threshold matter,

the Court notes that, although the VA argues that Bias' claim is limited to the August 12, 2014, printer installation, the parties agree that Bias installed two to three VistA printers during August, 2014. <u>See</u> Response ¶ 36, at 4 (asserting this fact); Bias Depo. at 39:5-25; Reply ¶ 36, at 3 (admitting this fact). The Court, therefore, considers both the August 12, 2014, printer installation and the two to three additional printer installations in its analysis.

Bias must demonstrate that: (i) he belongs to a protected class; (ii) the VistA printer installations are adverse employment actions; and (iii) the VistA printer installations took place under circumstances giving rise to an inference of discrimination. <u>See Young v. United Parcel Serv., Inc.</u>, 575 U.S. at 208; <u>Maxwell v. Whitley</u>, 553 F. Supp. 3d 927, 936 (D.N.M. 2021)(Riggs, J.). The parties do not dispute that Bias is African American and is, therefore, a member of a protected class. <u>See</u> Complaint ¶ 7, at 2. As a result, the Court is concerned with the second and third elements: the requirement that a plaintiff show he was subjected to an adverse employment action, and that the circumstances surrounding the challenged action warrant an inference of discrimination.

### 1.     The VistA Printer Installations Are Not Adverse Actions.

Generally, for conduct to qualify as an adverse employment action, the conduct must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. <u>See Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 761 (1998); <u>Wells v. Colo. Dep't of Transp.</u>, 325 F.3d 1205, 1212-13 (10th Cir. 2003); <u>Hunt v. Cent. Consol. Sch. Dist.</u>, 951 F. Supp. 2d 1136, 1206 (D.N.M. 2013)(Browning, J.). The Tenth Circuit is clear that an "adverse employment action" is defined liberally and can include acts that "'carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'"

Reindhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of

Kan., 371 F.3d at 1239).  Consequently, in analyzing whether an employment action is adverse, a

court should "take 'a case-by-case approach,' examining the unique factors relevant to the situation

at hand."  Sanchez v. Denver Pub. Schs., 164 F.3d at 532 (quoting Jeffries v. Kan., 147 F.3d 1220,

1232 (10th Cir. 1998)).  "'[A] mere inconvenience or an alteration of job responsibilities,' will not

suffice" as an adverse employment action.  Annett v. Univ. of Kan., 371 F.3d at 1239 (10th Cir.

2004)(quoting Sanchez v. Denver Pub. Schs., 164 F.3d at 532).

Bias contends that he suffered an adverse action, because he "was working outside his

classification" when he "installed two to three VistA [printers] that were outside his grade level."

Response at 5.  Bias argues that working outside his classification is adverse, because he was not

compensated appropriately for his work.  See Bias Depo. at 24:7-11.  The VA makes three

arguments that installing the printer is not an adverse action.  First, the VA argues that Bias

volunteered to install the VistA printer, and, therefore, was not subjected to an adverse

employment action.  See MSJ at 10.  The Court agrees that, rather than being subjected to an

employer's decision, at least regarding the initial VistA printer installation, Bias volunteered to

install the VistA printer and, thus, was not subjected to an adverse action.  See Factual Background

supra at 4 n.3, (deeming as undisputed the fact that Bias voluntarily installed the printer); Bias

Depo. at 38:14-17 (Hoses, Bias)(Q: "When you agreed to set up the printer you did so as a

volunteer, correct?" A: "Yes, sir.").  Moreover, Bias indicated that the VA did not require that he

learn to install VistA printers; rather, Bias voluntarily attended training to learn to install VistA

printers.  See Bias Depo. at 38:8-9 (Bias)("[W]e volunteered to get the training.").  See Semsroth

v. City of Wichita, 555 F.3d 1182, 1187 (10th Cir. 2009)(finding that the "voluntary nature" of a

plaintiff's work requirements "drains the incident of any material adversity that [the task] might

present"); <u>Somoza v. Univ. of Denver</u>, 513 F.3d at 1218 (10th Cir. 2008)(stating that there is "no actionable disparate treatment" where a plaintiff did not suffer economic losses when she volunteered for additional work assignments); <u>West v. Norton</u>, 375 F. Supp. 2d 1105, 1127 (D.N.M. 2004)(Browning, J.)(holding that a plaintiff's increase in work does not constitute an adverse action when she "assumed that work voluntarily").

Next, the VA argues that Bias did not suffer an adverse action, because installing VistA printers was within Bias' job responsibilities. <u>See</u> MSJ at 11; Position Description, filed August 10, 2021 (Doc. 30-1)(stating that the employee "sets up, operates, monitors computer systems and peripheral equipment such as CD read/write devices, printers, scanners, and external modems . . . [and] performs other duties as assigned.").  The Court disagrees that installing VistA printers was within Bias' job description.  The record indicates that installing VistA printers is a task that is defined clearly as a GS-11/12 responsibility.  <u>See</u> <u>infra</u> Analysis, § I(B)(1), at 43; Bias Depo. 76:10-21, 78:8-9, 15-17 (Bias)(describing how a VistA printer installation requires the technician to configure the printer to a network, "cod[e] . . . at the VistA network level," and receive prior authorization to install the VistA printer).

Third, the VA argues that installing two to three additional VistA printers is, at most, an inconvenience, with no consequential harm incurred, and a "minor alteration" at worst.  MSJ at 10.   Bias indicated that he spent approximately half an hour installing each VistA printer.  <u>See</u> Bias Depo. at 37:8-9 (Hoses, Bias)(Q: "How long did it take to install the printer?" A: "Once you've learned it, it won't take more than half an hour.").   <u>See also</u> Tr. at 5:21-25 (Hoses)("[P]laintiff testified that it took him and his coworkers less than an hour to install a printer . . . .  That's less than one percent of the 160 hours that [Bias] worked in August.").  Bias argues that installing the VistA printers was an adverse action, because installing a VistA printer is a

GS-11/12 task, and he was compensated only at the GS-9 level.  See Bias Depo. at 24:7-11.  Even

if a jury believed, however, that installing a VistA printer was a GS-11/12 task, the printer

installations do not qualify as an adverse action, because Bias spent a relatively short amount of

time installing the printers.  See Annett v. Univ. of Kan., 371 F.3d at 1239; Wells v. Colo. Dep't

of Transp. 325 F.3d at 1214 (concluding that a supervisor's "inappropriate" reprimands during an

altercation "were not severe or prolonged enough to constitute a materially adverse action" against

the plaintiff); Carter v. Mineta, 125 F. App'x 231, 239 (10th Cir. 2005)(unpublished)(concluding

that a seven-hour assignment was not an adverse action, because the plaintiff made no argument

that the project "altered her regular responsibilities, salary, or benefits," and "failed to present

evidence that any expansion of her job-description duties was severe or prolonged enough to

constitute a materially adverse" action).  The Court concludes that although Bias' position

description did not include installing VistA printers, nevertheless, Bias voluntarily installed the

printers, the printer installations took a relatively short amount of time, and were no more than a

mere inconvenience, and, therefore, Bias was not subjected to an adverse action.

### 2.     The Circumstances Surrounding the VistA Printer Installations Do Not Warrant an Inference of Discrimination.

The undisputed facts demonstrate that the circumstances surrounding the August, 2014,

VistA printer installations do not warrant an inference of discrimination, because there is no

evidence that the VA singled out Bias because of his race.  An inference of discrimination arises

when a plaintiff provides evidence that an employer harbored discriminatory animus towards the

plaintiff based on his or her status as a protected class.  See Furnco Const. Corp. v. Waters, 438

U.S. 567, 577 (1978)(stating that an inference of discriminatory animus is appropriate when "all

legitimate reasons . . . have been eliminated as possible reasons for the employer's actions");

Ibrahim v. All. for Sustainable Energy, LLC, 994 F.3d 1193, 1196-99 (10th Cir. 2021)(concluding that an employer's conduct gave rise to an inference of discrimination based on plaintiff's evidence of incongruencies in disciplinary action amongst similarly situated employees); Bennett v. Windstream Commc'ns., Inc., 792 F.3d 1261, 1267 (10th Cir. 2015)(holding that circumstances surrounding a plaintiff's termination do not give rise to an inference of discrimination, because she did not present evidence "either direct or circumstantial, supporting a claim of animus"). Although Bias contends that the inference of discrimination stems from him performing two to three VistA printer installations, Bias does not present evidence suggesting that his race motivated anyone to ask him to complete any printer installations.  Moreover, the parties do not dispute that Rodgers did not solicit Bias specifically to install the printer on August 12, 2014, rather, she emailed Bias and three other IT specialists who had volunteered to receive training for VistA printers, because they were able to complete the installation.  See Factual Background at 3 (deeming undisputed the fact that Rodgers emailed Bias and three other IT specialists to ask about the printer installation); Bias Depo. at 93:15-20 (Hoses, Bias)(Q: "So the four of you who were identified on Ms. Ro[d]gers' email, they fall within the purview of those people who were competent enough to do the work?" A: "Yes, sir.").  Since the evidence does not demonstrate that Rodgers, or any other person, considered Bias' race, age, or prior EEO activity when asking Bias to install the VistA printers, the Court concludes that the circumstances surrounding the VistA printer installations do not give rise to an inference of discrimination.

> **3.**     **Even if Bias Establishes a Prima Facie Case of Discrimination, He Does Not Demonstrate Pretext.**

After an employer provides a facially non-discriminatory explanation for its actions, the burden shifts to the plaintiff to prove that the employer's reason is "merely a pretext for

discrimination." Jaramillo v. Colo. Jud. Dep't., 427 F.3d at 1307.  Bias can demonstrate pretext by showing that the VA's proffered explanations are "so inconsistent, implausible, incoherent, or contradictory that [they are] unworthy of belief."  Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004)(citing Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1120 (10th Cir. 2001)).  See Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1123 (10th Cir. 2005).  The relevant inquiry is not whether the VA's proffered explanations were "'wise, fair or correct,'" but rather, whether the VA believed those reasons to be true and "'acted in good faith upon those beliefs.'"  Rivera v. City and Cnty. of Denver, 365 F.3d at 924-25 (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999)).

The VA's explanation for the printer installations is that: (i) Bias' job description required him to install printers; and (ii) Rodgers was seeking competent volunteers to install the VistA printer.  See MSJ 13-14.  Bias does not rebut the VA's explanation and does not offer evidence that suggests that the VA's explanation is pretextual.  See Maultsby v. Okla., 46 F. App'x 948, 950 (10th Cir. 2002)(unpublished)("[I]t is plaintiff's duty to point to specific evidence to show pretext.").  Both reasons are facially non-discriminatory, because neither of these reasons is "so inconsistent, implausible, incoherent, or contradictory that [they are] unworthy of belief."  Stover v. Martinez, 382 F.3d at 1071.   Moreover, the record corroborates the VA's proffered explanations, and, thus, the Court sees no evidence that suggests that the VA's explanation is pretextual.  See McGowan v. City of Eufala, 472 F.3d 736 (10th Cir. 2006)(noting that where "nothing in the record suggests [the Defendant's] rationale" for terminating an employee was "insincere," the Defendant's explanation was worthy of belief, and thus, legitimate and non-discriminatory).

The Court concludes that the material facts demonstrate that Bias does not establish a prima

facie case of discrimination.  See Rivera v. City and Cnty. of Denver, 365 F.3d at 925 ("Perhaps a reasonable factfinder could observe all the witnesses and believe Plaintiff's version of the events . . . however, that is not the issue. What is at issue is whether the evidence of Plaintiff's misconduct . . . was so weak that a rational factfinder could infer that [the employer's] expressed reason for terminating Plaintiff must have been pretextual.").  Consequently, the Court will grant summary judgment to the VA on Bias' claim that the VA racially discriminated against Bias based on the August, 2014, VistA printer installations.  See Fed. R. Civ. P. 56(a); Osborne v. Baxter Healthcare Corp., 798 F.3d 1260, 1266 (10th Cir. 2015)(noting that summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law).

**B.    THE VA DID NOT DISCRIMINATE AGAINST BIAS BY NOT INTERVIEWING OR SELECTING HIM FOR THE ITS GS-11/12 POSITION.**

To establish a prima facie case for non-selection discrimination, Bias must show that: (i) he belongs to a protected class; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite being qualified, he was rejected; and (iv) after being rejected, the position remained open, and the employer continued to seek applicants from persons of Bias' qualifications.  See McDonnell-Douglas 411 U.S. at 802; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000); Garrison v. Gambro, Inc., 428 F.3d 933, 937 (10th Cir. 2005).  As discussed in Analysis § I(A) supra, at 36, the parties do not dispute that Bias belongs to a protected class, because Bias is African American.  See Analysis § I(A) supra, at 36.  The Court concludes that Bias was not qualified for the position, was not rejected despite being qualified, and the position did not remain open while the VA sought applicants from persons of Bias' qualifications.

1.      **There is No Dispute of Fact About Whether Bias Was Qualified for the ITS GS-11/12 Position.**

The VA asserts that Bias was not qualified for the ITS position.  See MSJ at 14-16.  Bias makes two rebuttals.  First, Bias argues that his job description was reclassified incorrectly, and that he should have been classified at a GS-11.  See Response ¶ 23, at 3.  The Court is not persuaded by this argument, because Bias does not provide evidence to support his contention that he was reclassified incorrectly, and the record does not contain evidence that supports Bias' assertion.  See Tex. Dep't of Cmty Affs. v. Burdine, 450 U.S. 248 (1981)("[A] plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified. . . .");  Carter v. Mineta, 125 F. App'x at 237 (noting that a court considers the employer's perception of an employee's qualifications, not the employee's perception of her qualifications).

Second, Bias contends that he was qualified for the ITS GS-11/12 position, because he "had been doing GS-12 work for some time."  Response at 7.  To qualify for a GS-12 role, Bias must have completed "a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled."  5 C.F.R. §300.604(a).  Bias concedes that he did not complete fifty-two weeks in a GS-11 role.  See Response ¶ 23, at 3.  The vacancy announcement stated that the applicant must possess "at least one (1) full year of specialized experience . . . equivalent to the GS-11 grade level," including:

> [P]ossessing a broad knowledge of Information Technology concepts, principles, and practices sufficient to plan and carry out difficult and complex assignments and develop new methods, approaches, and procedures; working knowledge and utilization on Virtual Machine System (VMS) and/or Linux operating systems;  participating in VistA hardware upgrades, operating system upgrades or new VistA System installations; monitoring, diagnosing, troubleshooting, and resolving system malfunctions; possessing experience with the IT life cycle, specifically the design, acquisition, operation, maintenance and refresh of formation technology; possessing of knowledge and experience in management and

> oversight of VistA Imaging Hardware and [sic]; working knowledge and utilization of VMS and/or Linux operating systems; participating in VistA hardware upgrades, operating system upgrades or new VistA Imaging System installations.

Vacancy Announcement at 1, filed August 10, 2021 (Doc. 30-9).  Bias, therefore, was performing some work equivalent to the GS-11 level.  <u>Compare</u> Vacancy Announcement <u>with</u> Position Description, filed August 10, 2021 (Doc. 30-1)(detailing the requirements and expectations for an IT specialist).  To qualify for the GS-12 role, however, Bias must show that he was in a GS-11 equivalent role for fifty-two weeks, and not for an indeterminate amount of time.  5 C.F.R. §300.604(a).  Moreover, even if the Court concludes that Bias should have been reclassified as a GS-11, Bias still cannot demonstrate that he was qualified, because he has not submitted evidence that he completed fifty-two weeks in a GS-11 equivalent role.  Consequently, Bias does not show that there is a dispute of material fact about whether he was qualified for the ITS GS-11/12 position, and, thus, does not establish a prima facie case of non-selection discrimination.  The Court will, therefore, grant summary judgment for the VA on this claim.

> **2.      <u>Bias Was Not Rejected Despite Being Qualified for the ITS GS-11/12 Position</u>.**

To satisfy the third prong of a prima facie case of discrimination, Bias must show that, despite being qualified for the position, he was rejected.  <u>See</u> <u>McDonnell-Douglas</u>, 411 U.S. at 802; <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d at 1226.  Here, Bias was rejected because he was not qualified and not despite his qualifications.  <u>See</u> MSJ at 16 (affirming that the VA interviewed only GS-12 applicants and did not interview Bias, because he was not listed on the GS-12 certificate).  Accordingly, Bias cannot establish a prima facie case of non-selection discrimination, and, thus, the Court will grant summary judgment on this claim.

3.      **The ITS GS-11/12 Position did not Remain Open, and the VA Did Not Continue to Seek Applicants From Persons of Bias' Qualifications.**

To satisfy the fourth prong of a prima facie case of discrimination, Bias must show that, after being rejected, the position remained open, and the employer continued to seek applicants from persons of Bias' qualifications.  See McDonnell-Douglas, 411 U.S. at 802; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d at 1226.  Here, the position did not remain open after Bias was rejected, nor did the VA continue to seek applicants from person of Bias' qualifications.  See MSJ ¶ 6, at 5; Moore Decl. ¶¶ 10-11, at 2 (affirming that the VA hired three applicants from the GS-12 certificate for the ITS GS-11/12 position).  Consequently, Bias cannot satisfy the fourth prong of the prima facie case of discrimination, and, thus, the Court will grant summary judgment in the VA's favor on this claim.

4.      **Even if Bias Were Qualified for the Position, He Has Not Made a Showing of Pretext.**

After an employer offers a facially non-discriminatory explanation for its actions, the plaintiff must "counter with specific facts" showing that the employer's reason for its decision is "unworthy of credence" or racially motivated.  Jones v. Eaton Corp., 42 F. App'x 201, 208 (10th Cir. 2002)(unpublished).  To survive summary judgment, a plaintiff must show pretext by referencing "specific evidence that reveals weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence."  Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003).  See Jones v. Eaton Corp., 42 F. App'x at 208(unpublished)(noting that a showing of pretext "must be made by reference to affidavits, deposition transcripts, or specific exhibits. Repeated, unsupported assertions [that the defendant's decisions] were based on [the plaintiff's] race are insufficient to defeat summary judgment").

> [V]arious items of evidence which may be relevant to such a showing of pretext . . . include . . . (1) the employer's prior treatment of the plaintiff, (2) the employer's general policy and practice with respect to minority employment, particularly statistics reflecting a general pattern and practice of discrimination, (3) disturbing procedural irregularities, and (4) the use of subjective criteria, especially when used to evaluate candidates that are not objectively equally qualified.

Colon-Sanchez v. Marsh, 733 F.2d 78, 81 (10th Cir. 1984). The employer's proffered explanation must both be false and motivated by discriminatory intent. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993)("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.")(quoting Texas Dep't of Comm. Affs. v. Burdine, 450 U.S. at 258)(emphasis in Texas Dep't of Comm. Affs. v. Burdine).

The VA contends that it has proffered legitimate, non-discriminatory reasons for its actions. First, the VA argues that Bias was not interviewed or selected for the ITS GS-11/12 position, because he did not qualify for the position. See MSJ at 14-16. In response, Bias argues that "[i]t makes no sense to post a GS-11 position and not review any of the applicants," and that the GS-11 applicants "should have been reviewed and interviewed." Response at 6. Although the ITS vacancy announcement describes the position as a GS-11/GS-12 role, Moore reasoned that, because he would supervise the selected applicants, and sought "highly competent individuals who could function at a high level with little or no direct supervision," it was "unnecessary to interview candidates listed on the GS-11 certificate." MSJ at 17. See Moore Decl. ¶ 8, at 2. The Court concludes that these reasons are plausible. See Vacancy Announcement, at 4 filed August 10, 2021 (Doc. 30-9)("Vacancy Announcement")("The major duties below represent the full performance level of GS-12. At the GS-11 level, you will perform assignments of a more limited scope and with less independence."). See also Texas Dep't of Comm. Affs. v. Burdine, 450 U.S.

at 1097 ("[An] employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."); Webster v. Shulkin, 707 F. App'x 535, 543 (10th Cir. 2017)(unpublished)(concluding that a selecting official is required only to interview every applicant on a particular eligibility certificate, and not every candidate that applies for the position); York v. AT&T Co., 95 F.3d 948, 954 (10th Cir. 1996)("As long as the qualifications offered by the employer are reasonable and have been consistently applied to all applicants for the position, . . . there is no reason for the fact finder to supplant the employer's list of qualifications with its own."); McCrorey v. McHugh, No. CIV 12-1325 JCH/LAM, 2014 WL 12787987 at *11 (D.N.M. Sept. 23, 2014)(Herrera, J.)(stating that an employer is entitled to establish a set of objective criteria and that the applicants' relative qualifications are then viewed from the employer's perspective).

The Court cannot meaningfully weigh-in on the merits of Moore's decision, because the relevant Court inquiry centers on whether Moore's decision is unworthy of credence and not whether Moore's decision "makes sense." Response at 6.  See Hickman v. Flood & Peterson Ins., Inc., 766 F.2d 422, 425 (10th Cir. 1985)("Employers are given wide discretion in setting job standards and requirements and in deciding whether applicants meet those standards."); Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999)(noting that a court's role is to prevent unlawful hiring practices, and not act as a "'super personnel department' that second guesses employers' business judgments")(quoting Verniero v. Air Force Acad. Sch. Dist. No. 20, 705 F.2d 388, 390 (10th Cir. 1983)); Luster v. Vilsack, 667 F.3d 1089, 1904 (10th Cir. 2011)("'The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.'")(quoting Rivera v. City & Cnty. of Denver, 365 F.3d at 924-25).

Next, the VA argues that its reasons are not pretexual, because, when Moore decided to limit interviews to applicants on the GS-12 certificate, he knew nothing about Bias' race and, thus, could not have been motivated by discriminatory intent.  See MSJ at 17-18.  Bias argues that the VA's reasons are pretext, because "[i]t makes no sense to post a GS-11 position and not review any of the applicants," and that the GS-11 applicants "should have been reviewed and interviewed."  Response at 6.  Generally, a defendant must know that the employee was a member of a protected class to establish that the employer's proffered explanation is pretext.  See Belcher v. Boeing Com. Airplane Grp., 105 F. App'x at 226 (affirming the district court's ruling that the plaintiff did not demonstrate pretext, because the employer was unaware of plaintiff's race); Owens v. Donahoe, 913 F. Supp. 2d 1055, 1062 (D. Colo. 2012)(Martínez, J.)(noting that a court cannot infer discriminatory intent if the decision maker is "not aware of a person's race").  Bias argues that the VA's explanation is pretext, because Moore had "access to information" from Tanner.  Response at 7.  Bias does not argue directly that Tanner conveyed any knowledge to Moore, nor does Bias present evidence to support his assertion that Moore may have relied on such knowledge.  The Court recognizes, however, that Bias makes a "cat's paw"[16] argument that a subordinate's bias influenced an employer's decision.  "In the employment discrimination context,

---

[16]The Tenth Circuit has adopted the "cat's paw theory," which, in this context, "refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d 476, 484 (10th Cir. 2006)(citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)). This theory, however, does not make the subordinate employee liable; rather, it provides a circumstance in which "'a defendant may be held liable for a subordinate employee's prejudice even if the manager lacked discriminatory intent.'" E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 485. Thus, this theory cannot be used to conclude that an employee is liable for discriminatory discharge under NHMRA, but can be used to hold a defendant liable when a manager follows the biased recommendation of a subordinate without investigating the complaint against the employee. See E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A., 450 F.3d at 485.

'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 456, 484 (10th Cir. 2006)("BCI"). Here, under the cat's paw theory, Tanner -- Bias' former supervisor and Moore's co-committee member -- allegedly used Moore -- the committee chairman and decisionmaker -- to discriminate against Bias by influencing Moore to discount the applicants on the GS-11 certificate. For an employer to escape liability in a subordinate bias case, it must show that the decision maker "would have acted the same absent any biased input." BCI, 450 F.3d at 487 (noting that an employer can escape liability by demonstrating that it came to its decision "on an independent basis"). The plaintiff must establish, however, that the biased subordinate had "more than mere 'influence' or 'input' in the decisionmaking process," and that "the biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action." BCI, 450 F.3d at 487 (quoting Lust v. Sealy, Inc., 383 F.3d 580, 584 (7th Cir. 2004)). Bias does not introduce any evidence that supports his subordinate bias theory. Although Bias' subordinate bias theory potentially could establish pretext, the Court concludes that this theory, without factual support, is insufficient to rebut the VA's given legitimate, non-discriminatory reasons. See Ward v. Jewell, 772 F.3d 1199, 1205 (10th Cir. 2014)(stating that the cat's paw theory does not apply when decision-makers make independent decisions "without relying on biased subordinates"); Koon v. Sedgwick Cnty., Kan., 429 F. App'x 713, 716 (10th Cir. 2011)(unpublished)(affirming summary judgment in favor of the defendant where the plaintiff does not "provide[ ] any specific facts that speak to [their] assertion" of pretext or "effectively address[ ]" the defendant's proffered reason); Diaz v. City of Tucumcari, No. CIV11-0090 JB/CG, 2011 WL 6830410 at *24 (D.N.M. 2011)(Browning, J.)(concluding that the plaintiff did not

establish pretext, because she did not provide specific facts to support her allegation). Consequently, the Court concludes that Bias has not presented evidence sufficient to raise a genuine dispute about the VA's motivation and will grant summary judgment in the VA's favor on this claim.

## II.    THE VA DID NOT RETALIATE AGAINST BIAS BY HAVING HIM WORK OUTSIDE HIS JOB DESCRIPTION, OR BY FAILING TO INTERVIEW OR SELECT HIM FOR THE ITS GS-11/12 POSITION.

The VA argues that Bias cannot establish a prima facie case for retaliation for two reasons: (i) no causal connection exists between Bias' protected activity and the alleged adverse actions; and (ii) Bias cannot demonstrate that the VA's explanations are pretextual.  See MSJ at 14.  A plaintiff bringing a retaliation claim "must establish that retaliation played a part in the employment decision" either by: (i) showing directly that retaliatory animus played a role in the adverse action; or (ii) using the McDonnell-Douglas shifting framework.  Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1224-25 (10th Cir. 2008).  Under the McDonnell-Douglas framework, a plaintiff can establish a prima facie case of retaliation by showing that: (i) he engaged in protected activity; (ii) he suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action.  See Somoza v. Univ. of Denver, 513 F.3d at 1212 (10th Cir. 2008); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202; O'Neal v. Ferguson Constr. Co., 237 F.3d at 1252.  If Bias makes a prima facie case of retaliation, then the burden of production shifts to the VA to provide a legitimate, non-discriminatory explanation for its actions.  See McDonnell-Douglas, 411 U.S. at 802-04.  If the VA provides a facially non-discriminatory explanation, the burden shifts back to Bias to prove that the VA's explanation is "merely a pretext for discrimination."  Jaramillo v. Colo. Jud. Dep't., 427 F.3d at 1307.

A.     THE VA DID NOT RETALIATE AGAINST BIAS BY HAVING HIM
       WORK OUTSIDE HIS JOB DESCRIPTION.

Here, because Bias does not provide direct evidence of retaliatory motive, he must make a

prima facie showing of retaliation using the McDonnell-Douglas framework.  To survive summary

judgment, Bias must show that a dispute of material facts exists as to whether: (i) he engaged in

protected activity; (ii) he suffered an adverse employment action; and (iii) there was a causal

connection between the protected activity and the adverse action.  Bias' EEO complaint is a

protected activity under Title VII.  See Anderson v. Coors Brewing, 181 F.3d 1171, 1179 (10th

Cir. 1999); McCue v. State of Kan., 165 F.3d 784, 789 (10th Cir. 1999); McGarry v. Board of

Cnty. Com'rs of Cnty. of Pitkin, 175 F.3d 1193, 1201 (10th Cir. 1999)(noting that filing an EEOC

charge "clearly meets the first element of the retaliation test.").  As noted in Analysis § I(A)(1),

supra, at 36-39, Bias did not suffer an adverse action when he installed the VistA printers.  Even

if Bias satisfies the adverse action prong, however, Bias still cannot establish a prima facie case of

retaliation, because no causal connection exists between Bias' EEO activity and the printer

installation.  The Court, therefore, will grant summary judgment on Bias' VistA printer retaliation

claim.

1.     No Causal Connection Exists Between Bias' Prior EEO Activity and
       the VistA Printer Installations.

The VA argues that there is no causal connection between Bias' protected activity and the

VistA printer installations, because Rodgers did not know about Bias' EEO complaint when she

emailed him and others to ask for volunteers to install the VistA printer.  See MSJ at 14.  Bias does

not argue that a causal connection exists between his EEO complaint and the VistA printer

installations.  A causal connection "may be demonstrated by evidence of circumstances that justify

an inference of retaliatory motive, such as protected conduct closely followed by adverse action."

Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997).  See Proctor v. United Parcel Serv., 502 F.3d at 1209; Walton v. N.M. State Land Off., 113 F. Supp. 3d at 1190; Gerald v. Locksley, 785 F. Supp. 2d at 1099-1100.  Courts look closely to the length of time between the employee's protected activity and the alleged retaliatory action, and, unless the retaliatory action is "*very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." Anderson v. Coors Brewing Co., 181 F.3d at 1179 (emphasis in original).  See Bekkem v. Wilkie, 915 F.3d 1258, 1271 (10th Cir. 2019)("[W]here a gap of three months or longer has occurred, a plaintiff must present other evidence -- 'more than mere speculation, conjecture, or surmise' -- to establish that [his] protected activity was a but-for cause of the adverse employment action.").  For retaliatory animus to be the "but-for" cause of an adverse action, an employer or decisionmaker must know that an employee engaged in protected activity.  See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993)("To establish a causal connection, plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity.").

Here, there is more than a two-year gap between Bias' protected activity and the alleged adverse action.  See Complaint ¶¶ 20-23, at 8 (alleging that the VA retaliated against Bias based on an EEO complaint he filed in 2011); MSJ at 19.[17]  Bias must offer, therefore, additional evidence to support a causal link between his protected activity in 2011 and the alleged adverse action in 2014.  See Anderson v. Coors Brewing Co., 181 F.3d at 1179; Piercy v. Maketa, 480

---

[17]The record reflects that Bias filed two separate EEO complaints: one in 2011 and one in October of 2014.  See Complaint ¶¶ 20-23, at 8; Complaint of Employment Discrimination, filed August 10, 2021 (Doc. 30-3).  The Court analyzes only the 2011 EEO complaint, because Bias filed the October 2014 complaint after the VistA printer and ITS GS-11/12 position incidents, and, thus, the October 2014 complaint cannot be the "but-for" cause of retaliation.

F.3d 1192, 1198-99 (10th Cir. 2007)("[T]he passage of time does not necessarily bar a plaintiff's retaliation claim if *additional* evidence establishes the retaliatory motive.")(emphasis in original); Meiners v. Univ. of Kan., 359 F.3d at 1231 (concluding that a three-month gap, by itself, between an EEO Complaint and the adverse action was too long to establish temporal proximity). Bias does not provide additional evidence, either direct or indirect, to support a causal connection between his 2011 EEO Complaint and installing the VistA printers in August 2014. In examining the record, the Court does not see such a connection, because Bias admits that Rogers did not know about his prior EEO activity when she contacted him to install the VistA printer. See Bias Depo. at 81:5-11 (Hoses, Bias)(Q: "[S]he knew nothing about your EEO complaint, right?" A: "No." Q: "So when she offered this task up to you and others it wasn't because of your prior EEO activity was it?" A: "No."); Walton v. N.M. State Land Off., 113 F. Supp. 3d at 1199 (concluding that the plaintiff could not satisfy the causal connection prong, because her employer did not know that she had engaged in protected activity). The Court, thus, concludes that Bias has not established a prima facie case of retaliation, because he has not demonstrated a causal link between his 2011 EEO complaint and the 2014 VistA printer installations.

> **2.      Even If a Causal Connection Exists Between Bias' 2011 EEO Complaint and the VistA Printer Installations, He Has Not Made a Showing of Pretext.**

After an employer provides a facially non-discriminatory explanation for its actions, the burden shifts to the plaintiff to prove that the employer's reason is "merely a pretext for discrimination." Jaramillo v. Colo. Jud. Dep't., 427 F.3d at 1307. Bias can demonstrate pretext by showing that the VA's proffered explanations are "so inconsistent, implausible, incoherent, or contradictory that [they are] unworthy of belief." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004)(citing Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1120 (10th Cir. 2001)). See

Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1123 (10th Cir. 2005).  The relevant inquiry is not whether the VA's proffered explanations were "'wise, fair or correct,'" but rather, whether the VA believed those reasons to be true and "'acted in good faith upon those beliefs.'"  Rivera v. City and Cnty. of Denver, 365 F.3d at 924-25 (quoting Bullington v. United Air Lines, Inc., 186 F.3d at 1318).

The VA argues that Bias cannot demonstrate that its proffered explanations are pretextual.  See MSJ at 14.  As discussed in Analysis § I(A)(3), supra, at 40-41, the VA's explanation for the printer installations is that: (i) Bias' job description required him to install printers; and (ii) Rodgers was seeking competent volunteers to install the VistA printer.  The Court concludes that these explanations are plausible.  See Analysis § I(A)(3), supra, at 40-41.  Bias does not argue that the VA's reasons are pretext for retaliation specifically, and the Court does not see evidence in the record that casts doubt upon the VA's explanations.  See Analysis § I(A)(3), supra, at 40-41.  The Court, therefore, concludes that Bias has not rebutted the VA's explanations, and, consequently, will grant summary judgment in the VA's favor.  See Jones v. Eaton Corp., 42 F. App'x at 208; Bittermann v. Zinke, 465 F. Supp. 3d 1185, 1200 (D.N.M. 2020)(Brack, J.)(concluding that the plaintiffs "failed to carry their burden to establish pretext" by failing to establish whether the employer harbored retaliatory animus when terminating the plaintiffs employment).

## B.    THE VA DID NOT RETALIATE AGAINST BIAS BY NOT INTERVIEWING OR SELECTING HIM FOR THE ITS POSITION.

To survive summary judgment, Bias must show that genuine disputes of material fact exist whether: (i) he engaged in protected activity; (ii) he suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202; O'Neal v. Ferguson Constr. Co., 237

F.3d at 1252.  If Bias establishes a prima facie case of retaliation, the burden shifts to the VA "to articulate a legitimate, nondiscriminatory reason for" its actions and, if it states a non-discriminatory reason, the burden shifts back to Bias "to demonstrate that the proffered explanation is a pretext for retaliation." Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d at 1202-03. As discussed in Analysis § II(A), supra, at 50-51, the parties do not dispute that Bias engaged in protected activity when he filed the 2011 EEO complaint.  The Court concludes that Bias cannot establish a prima facie case of retaliation, because no causal connection exists between his 2011 EEO complaint and the VA's failing to interview Bias for the ITS GS-11/12 position.  The Court, therefore, will grant summary judgment for the VA on this claim.

### 1.  Bias Suffered an Adverse Employment Action When the VA Refused to Interview Him for the ITS GS-11/12 Position.

An adverse employment action "must be 'materially adverse' to the employee's job status . . . .  The adverse action must amount to 'a significant change in employment status,' such as 'firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Meiners v. Univ. of Kan., 359 F.3d at 1230 (quoting Aquilino v. Univ. of Kansas, 268 F.3d 930, 934 (10th Cir. 2001)).  Neither Bias nor the VA argue whether Bias suffered an adverse action when the VA failed to promote Bias, but, nonetheless, the facts show that Moore decided to discount GS-11 applicants, and, in effect, failed to promote Bias.  See MSJ at 2; Moore Decl. ¶ 9, at 2 (affirming that Bias neither was interviewed nor selected for the position).  The Court, therefore, concludes that Bias suffered an adverse action when the VA did not promote Bias.  See Lincoln v. BNSF Ry Co., 900 F.3d 1166, 1209 (10th Cir. 2018)(concluding that, although the employer could not have been motivated by retaliatory animus when failing to promote the plaintiff, the failure to promote still was an adverse action); McGarry

v. Board of Cnty. Com'rs of Cnty of Pitkin, 175 F.3d 1193, 1201 (10th Cir. 1999)(concluding that employers "failure to consider [the Plaintiff] for the position . . . . satisfies the 'adverse action' prong.")(no citation for quotation).

### 2.   No Causal Connection Exists Between Bias' 2011 EEO Complaint and the ITS Position.

Bias argues that he suffered an adverse action by installing the VistA printers, but does not argue that he suffered an adverse action when the VA declined to interview him for the ITS GS-11/12 position.   Courts look closely to the length of time between the employee's protected activity and the alleged retaliatory action, and, unless the retaliatory action is "*very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."   Anderson v. Coors Brewing Co., 181 F.3d at 1179 (emphasis in original).   As noted in Analysis § II(A)(1), supra, at 52, more than two years elapsed between the 2011 EEO complaint, and Bias' allegation that the VA retaliated against him by refusing to interview or select him for the ITS GS-11/12 position.   Bias has not presented evidence to link his EEO complaint with his non-selection for the ITS position, and, the two-and-a-half year gap between the events cannot, by itself, support an inference of a causal connection.   See Anderson v. Coors Brewing Co., 181 F.3d at 1179; Meiners v. Univ. of Kan., 359 F.3d at 1231. The Court, therefore, concludes that Bias cannot establish a prima face case of retaliation and will grant summary judgment for the VA.

### 3.   Even if Bias Establishes a Prima Facie Case of Retaliation, He Has Not Made a Showing of Pretext.

The VA argues that it has provided legitimate, non-discriminatory explanations for its actions: (i) Bias was not interviewed or selected for the ITS position, because he did not qualify for the position; and (ii) Moore did not know that Bias had filed an EEO complaint, and, thus,

could not have been motivated by retaliatory animus.  See MSJ 18-20.  In response, Bias makes

the same argument that Moore had "information" about Bias from Tanner.  Response at 8.  See

Analysis § I(B)(4), supra, at 48-49.  The Court concludes that Bias' "cat's paw" argument cannot

prevail in the retaliation claim for two reasons.  First, a necessary prerequisite to retaliatory animus

is that the discriminator knows about an employee's protected EEO activity.  See Webster v.

Shulkin, 707 F. App'x at 541(unpublished)(concluding that a plaintiff's argument "can't support

a retaliation claim," where the plaintiff "only speculate[d]" that the employer "concocted [a]

scheme" and did not demonstrate that the alleged retaliation was motivated by involvement in

protected EEO activity);  Ward v. Jewell, 772 F.3d at 1205 (stating that, "[t]o survive summary

judgment on a 'Cat's Paw' theory, [the plaintiff] must establish bias by the subordinates . . . .");

Harp v. Dep't of Hum. Servs., Colo. Mental Health Inst. at Pueblo, 932 F. Supp. 2d 1217, 1231

(D. Colo. 2013)(Brimmer, J.)(concluding that the plaintiff failed to establish a causal connection

between a protected activity and an adverse employment action where there was "no evidence that

the decision maker . . . was aware of the complaints [the plaintiff] made . . . or considered them

when deciding to terminate her employment.");  Tyree v. Dept of Trans., N.M., F. Supp. 2d 1351,

1364-65 (D.N.M. 2006)(Armijo, J.)(granting summary judgment to the employer after concluding

that no evidence of pretext existed when record indicated that the plaintiff's supervisor knew

nothing about the plaintiff's discrimination complaints).  While Tanner knew that Bias was African

American, there is no evidence that Tanner knew about Bias' protected activity, and Bias and

Tanner worked together for only one year -- before Bias' 2011 EEO complaint.  See Bias Depo at

59:11-17 (Hoses, Bias)(Q: "And when you worked with Steve Tanner, when was that?"

A: "Probably . . . 2006, '07, '08, something like that."  Q: "How long did you work with him, for

what period of time?"  A: "Maybe a year.").   Second, even assuming that Tanner knew about

Bias' prior EEO activity, nothing in the record indicates when Tanner might have learned about Bias' 2011 EEO complaint.  The temporal proximity analysis is paramount to a retaliation claim; thus, it is equally imperative to know when Tanner learned about Bias' prior EEO activity, because if the gap were more than three months, Bias must -- but has not -- submitted additional evidence linking the events.  See, e.g., Meiners v. Univ. of Kan., 359 F.3d at 1231 (concluding that a three-month gap, by itself, between an EEO Complaint and an adverse action was too long to establish temporal proximity).  The Court, therefore, concludes that Bias has not presented evidence sufficient to raise a genuine doubt about the VA's motivation, and will grant summary judgment for the VA on the retaliation claim.

　　**IT IS ORDERED** that: (i) the Defendant's Motion for Summary Judgment and Supporting Memorandum, filed August 10, 2021 (Doc. 30), is granted; and (ii) Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Donald G. Gilpin
Christopher P. Machin
The Gilpin Law Firm, LLC
Albuquerque, New Mexico

　　*Attorneys for the Plaintiff*

Alexander M.M. Uballez
　United States Attorney
Christine Hyojin Lyman
　Assistant United States Attorney

United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendant*